FILED
2012 SEP 6 P 2:00
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| PAUL H. TITUS, | : | Case No. 10-23668-TPA |
| *Debtor* | : | Chapter 7 |
| | : | |
| ROBERT SHEARER, Trustee for the | : | |
| Bankruptcy Estate of Paul H. Titus, | : | Adv. No. 10-2338-TPA |
| *Plaintiff* | : | |
| | : | Related to Doc. Nos.  61, 63 |
| v. | : | |
| | : | |
| PAUL H. TITUS and BONNIE TITUS, | : | |
| *Defendants* | : | |

*Appearances:*   Douglas Campbell, Esq., for the Plaintiff
John Vetica, Esq., for the Defendant*s*

**MEMORANDUM OPINION**

Presently before the Court for decision is the ***Motion to Alter or Amend Judgment Pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure*** ("Motion"), filed by the Defendants at Doc. No. 63.  *Fed.R.Bankr.P. 9023* incorporates *Fed.R.Civ.P. 59(e)*, which is the basis for the *Motion*.  The *Motion* was filed in response to the *Memorandum Opinion* and *Order* issued by the Hon. Bernard Markovitz on February 29, 2012, after a trial held on May 25, 2011.  *In re Titus*, 467 B.R. 592 (Bankr. W.D. Pa. 2012).   Judge Markovitz retired before deciding the *Motion* and the case was transferred to the Undersigned.  The Court has previously ruled that, despite this somewhat unusual circumstance, it can and will decide the *Motion*, being careful to do so under the *Rule 59(e)* standard rather than conducting a de novo or appellate review.  *See*, Order

1

of May 14, 2012, Doc. No. 76. In that same May 14th Order, issued after an oral argument on the *Motion*, the Court also directed the Parties to brief a number of issues and they have now done so. See Doc. Nos. 82, 83. After a review of the trial record and the materials filed by the Parties, the Court finds that the *Motion* must be denied.[1]

## *FACTUAL BACKGROUND*

The Court will not here restate the facts of the case in any great detail. The Parties themselves are of course familiar with the facts, and others who may be interested in the factual details are referred to the comprehensive *Memorandum Opinion* authored by Judge Markovitz.

The Debtor, an attorney, was a partner in the former Pittsburgh law firm of Titus and McConomy, LLP ("TM"). TM leased office space from TrizecHahn Gateway, LLC ("TrizecHahn"). After TM disintegrated and vacated the leased premises, TrizecHahn sued the firm and a number of its partners, including the Debtor, for breach of the lease agreement. TrizecHahn obtained a large joint and several judgment (over $3 million) and then began attempting to collect on that judgment. In connection with that effort, it filed fraudulent transfer actions against at least some of the former TM partners, including the Debtor. The basic theory of these various actions is that married partners who went to work elsewhere after the demise of TM, and had their compensation from their new employers direct-deposited into accounts held in tenancies by the

---

[1] The Court's jurisdiction under *28 U.S.C. §1334* has not been placed at issue. This is a core proceeding pursuant to *28 U.S.C. §§157(b)(2)(A)* and *(H)*.

entireties with their spouses, had thereby engaged in a fraudulent transfer by placing such funds outside the reach of the TrizecHahn judgment (on which the spouses were not liable).

In the particular case of the Debtor, after leaving TM he became an equity partner in the firm of Schnader Harrison Segal & Lewis, LLP ("Schnader"). Compensation that the Debtor received from his position at Schnader ("Schnader Wages"[2]) was deposited into an account ("the Account") he held jointly in a tenancy by the entireties with his wife, defendant Bonnie Titus. TrizecHahn filed a fraudulent transfer action against Mr. and Mrs. Titus in state court and the case was eventually removed to this Court where the Chapter 7 Trustee was substituted as Plaintiff. Judge Markovitz found that the relevant "Look-back Period" for purposes of the fraudulent transfer action was the period from April 23, 2003 through April 23, 2007.[3] In other words, this is the relevant period of time for examination of deposits into and expenditures out of the Account.

The basic methodology employed by Judge Markovitz in reaching his decision was fairly straightforward. He started out by accepting as a legal principle that a transfer of Schnader Wages into the Account would constitute a fraudulent transfer vis-a vis individual creditors of the Debtor, except to the extent that such funds were then used by the Defendants to purchase

---

[2] The Court will use the term "Schnader Wages" to refer to any type of remuneration received by the Debtor from Schnader, whether wages, bonus, profit-sharing, etc. The term "non-Schnader Wages" will be used to refer to funds from any source other than Schnader.

[3] The *Motion* does not challenge the correctness of the applicable Look-back Period as found by Judge Markovitz. Consequently, the Court simply accepts that part of the ruling as correct for purposes of deciding the *Motion.* Unless otherwise noted, all references in this *Memorandum Opinion* as to deposits into and expenditures out of the Account should be understood to refer to those occurring during the Look-back Period.

"necessaries." [4] Applying that principle, he first determined the total amount of deposits made into the Account during the Look-Back Period, what portion of that total represented deposits of Schnader Wages, and what portion was from other or unknown sources. He then looked at expenditures made from the Account, determining what portion of those were for necessaries, and what portion went to non-necessaries or to purchase jointly-held assets.

Putting some "meat" on the "bones" framework noted above, Judge Markovitz concluded that deposits made by the Debtors into the Account during the Look-Back Period totaled $855,578.45. Of that amount, he found that "at least" $575,228.25 was from Schnader Wages, and another $142,974 from Social Security benefits received by the Defendants. Judge Markovitz did not expressly characterize the source of the remaining $137,376.20 of deposits – the "Unknown Deposits," of which more, later.

On the expenditure side, Judge Markovitz found that $423,908.18 had been spent out of the Account for "non-necessaries" or entireties assets ("Objectionable Expenditures"). He then determined that the Trustee failed in his burden to prove that the deposits into the Account attributable to Social Security Benefits were not used toward the Objectionable Expenditures. He thus concluded that it was at least as likely as not that the Social Security Benefits were used toward the Objectionable Expenses and found that the amount of those Benefits had to be deducted from the total Objectionable Expenditures amount, resulting in his finding of fraudulent transfer liability against the Defendants of $281,066.18.

---

[4] Again, the Defendants have not here challenged that legal conclusion and the Court accepts it as correct in deciding the *Motion*.

### *Defendants' Motion*

The Court begins with the following statement as set forth in Paragraph 13 of the *Motion*:

> In order to prevent a manifest injustice, the Defendants ask the Court to reconsider the $281,066.18 worth of fraudulent transfers. For purposes of this Motion only, and reserving their right to appeal on all other issues, the Defendants accept the Court's findings of fact and conclusions of law, with the exception of those objections stated in this Motion.

*Motion* at ¶13. When the above standard is applied, a fair reading of the *Motion* reveals the following contentions by the Defendants as to why they believe the judgment should be amended (references are to Paragraphs in the *Motion*):

- The Court failed to consider evidence showing it was more likely than not that at least an additional $155,347 (¶¶15-23) and possibly up to an additional $357,522.10 (¶¶24- 30) was deposited into the Account from sources other than the Schnader Wages.

- The Trustee did not prove that Objectionable Expenditures were funded from Schnader Wages and not from these other sources, therefore the Defendants' liability should be reduced by at least $155, 347, and possibly reduced all the way to $0. (¶¶22-23, 31-32).

The above thus represents the "universe" of issues or grounds for reconsideration as stated by the Defendants in their *Motion*.

### **Motion for Reconsideration Standard**

It will be helpful to review the general principles to be applied when deciding a motion under *Rule 59(e)* before considering the specific grounds raised in the *Motion*. In language

5

equally applicable to a case in this Court, the District Court recently articulated the general approach to be followed in deciding such motions:

> A motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already rightly or wrongly made ... Litigants are cautioned to "evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." ... Motions for reconsideration should not relitigate issues already resolved by the court and should not be used to advance additional arguments which could have been made by the movant before judgment.

*Solis v. Makozy*, 2012 WL 1458232 *1 (W.D. Pa. April 27, 2012) (citations omitted). In keeping with the above, motions for reconsideration are typically only granted "sparingly," in "extraordinary circumstances." *Foster v. Westchester Fire Ins. Co.* 2012 WL 2402895 *4 at FN1 (W.D. Pa. June 26, 2012). *See also, e.g., In re Kuhar*, 2007 WL 2245912 *2 (Bankr. E.D. Pa. 2007) (*Rule 59(e)* motions should be granted sparingly because of the strong interest in maintaining the finality of judgments.)

Motions for reconsideration under *Rule 59(e)* must rely on one of three grounds: (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See*, *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). In the present case, the Parties agree that the *Motion* does not allege any change of law or newly-discovered evidence as a ground for relief, so the sole argument is over whether there is a need to prevent a manifest injustice or correct a clear error of law or fact.

The meanings of the terms in this third prong under *Rule 59(e)* are not entirely settled, but clearly a moving party has a very high hurdle to leap over before it can meet the

6

required standard to alter or amend a judgment. As one court recently stated with respect to what "manifest injustice" entails for purposes of *Rule 59(e)*:

> There is no judicial consensus ... but several courts have applied the Black's Law Dictionary definition, which states that "manifest injustice" is an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds. A party may only be granted reconsideration based on manifest injustice if the error is apparent to the point of being indisputable. In order for a court to reconsider a decision due to "manifest injustice," the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it.

*In re Green Goblin, Inc.*, 2012 WL 1971143 *1 (Bankr. E.D. Pa. May 31, 2012) (quoting *In re Roemmele*, 466 B.R. 706 (Bankr. E.D. Pa. 2012). A similar application of the dictionary definition to a clear error of law or fact requires an error that is "plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *In re Oak Park Calabasas Condominium Ass'n*, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) (quoting *Black's Law Dictionary* (7th Ed. 1999)).

Other courts have expressed much the same view, though in somewhat different words. *See, e.g., In re Telfair*, 745 F. Supp. 2d 536, 561 (D.N.J. 2010) (the term manifest injustice is an overlap of the term manifest error of law or fact, and it means that the court overlooked some dispositive factual or legal matter that was presented to it, or alternatively that there was an error in the trial court that was direct, obvious, and observable); *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601 (7th Cir. 2000), rehearing denied, cert. denied as *Beverly v. Oto*, 531 U.S. 1152 (2001) (manifest error is not demonstrated by disappointment of losing party, rather it is the wholesale disregard, misapplication, or failure to recognize controlling precedent); *In re Parikh*, 397 B.R. 518 (Bankr. E.D.N.Y. 2008) (same).

This is the demanding standard which the Defendants must meet to prevail on their *Motion*. In addition, though it almost goes without saying, the Defendants bear the burden of proving the existence of sufficient grounds entitling them to relief under *Rule 59(e)*. *See, e.g., In re Henning*, 420 B.R. 773, 784 (Bankr. W.D. Tenn. 2009) (citing cases).

## *DISCUSSION*

With this background in mind, attention can now focus on the specific contentions of the Defendants' *Motion* – after taking one short detour. Before considering the arguments of the Parties concerning these objections, an "objection" first raised by the Defendants at the April 26, 2012 oral argument on the *Motion* and then again in their post-*Motion* brief filed on June 6, 2012, in response to the Court's May 14th Order needs to be addressed. Specifically, the Defendants now also state that they do not agree with the manner in which Judge Markovitz reached the conclusion that at least $575,228.25 of the deposits into the Account were from Schnader Wages. *See, e.g., Defendants' Brief* at ¶¶12, 22, 24-26, 28-29, Doc. No. 32. As is very clear from the bullet point summaries of the *Motion* set forth above, Page 5 *supra*, this "objection" was not raised in the *Motion*, which sets forth absolutely nothing to indicate that the Defendants had a disagreement with that particular aspect of the decision by Judge Markovitz.

The Court could perhaps consider this new ground of objection even though it is not set forth in the *Motion*. *See, e.g., Varley v. Tampax, Inc.*, 855 F.2d 696, 699-700 (10th Cir. 1988) (once motion to amend judgment is filed, a court has the power and jurisdiction to amend judgment for any reason, not just those set forth in the motion itself, if it chooses to do so). Even assuming

this power exists, however, the Court chooses not to exercise it here for a number of reasons. First, the Court believes that the Defendants should be held to their word as stated in Paragraph 13 of their *Motion,* quoted above. Second, the Trustee has objected to consideration of this new argument since it was not raised in the *Motion*. *See, Trustee's Brief* at 5-6, 11, Doc. No. 83. Third, the somewhat unusual and awkward situation of one judge deciding a *Rule 59(e)* motion related to an opinion by another judge of the same court, while not *per se* impermissible, does at least warrant a circumspect approach rather than an expansive one. Finally, and in any event, having heard what the Defendants had to say on this point, the Court is not convinced it represents any sort of "manifest" injustice that cries out for relief even though it was not set forth in the *Motion*. For these reasons, this new "objection" will not be considered any further and the Court will not examine the "correctness" of the findings of Judge Markovitz as to the amount of Schnader Wages deposited into the Account.

Turning then to the grounds of objections that *were* properly raised in the *Motion*, actually they are fairly simple and straightforward. First, the Defendants argue that Judge Markovitz failed to properly characterize some deposits into the Account as non-Schnader Wages. Second, they argue that if those deposits are so characterized, then pursuant to the methodology employed by Judge Markovitz (as, for example, with respect to the Social Security Benefits) those deposits should be applied in a setoff fashion to further reduce the Defendants' liability because the Trustee failed to prove that they were not used as payment toward the Objectionable Expenses.

With respect to the first of their arguments, as indicated above, the Defendants claim that at least $155,347, and possibly up to $357,522.10 in additional non-Schnader Wages, was

9

deposited into the Account beyond what Judge Markovitz found. Before even examining the evidence for these alleged deposits that the Defendants contend was overlooked by Judge Markovitz, an immediate problem becomes apparent. Judge Markovitz found total deposits of $855,578.45 were made into the Account, of which at least $575,228.25 consisted of Schnader Wages, and of which $142,974 comprised Social Security Benefits – and therefore non-Schnader Wages. For reasons explained above, none of these findings are contested by the Defendants for purposes of the *Motion*, and the Court will therefore not alter or amend the judgment with respect to those findings. That leaves only $137,376.20 in Account deposits (the "Unknown Deposits," as the Court has previously designated them) that were not characterized by Judge Markovitz as either Schnader Wages or non-Schnader Wages. The Unknown Deposit figure thus represents the maximum amount that the Court could logically find should also have been characterized as non-Schnader Wage deposits into the Account.

With that limitation in mind, the Court can now consider the evidence pointed to by the Defendants to support their argument. They cite Exhibits 6, 9, and 67 as establishing the existence of the additional non-Schnader Wages. Exhibit 6 is the Defendants' 2004 tax return, Exhibit 9 is their 2005 tax return, and Exhibit 67 is a collection of documents including a list prepared by the Trustee that shows deposits into the Account for which he said he could not determine a source, and monthly account statements for the Account during the Look-back Period. It must be recognized right up front that, even by the Defendants' acknowledgment, no one of these Exhibits, in and of itself, provides conclusive evidence to prove the argument in the *Motion*. Rather, the Court is being asked in some sense to "connect the dots" or draw inferences from these Exhibits to get where the Defendants want it to go.

10

The "at least $155,347" component of the Defendants' argument is based on the tax returns. They show that during the years of 2004 and 2005 the Defendants received that amount in income from various sources other than Schnader Wages. The amounts in question may be summarized as follows:

2004 (Exhibit 6)

| -- | $7,009  | Withdrawal from a Prudential Insurance policy |
| -- | $10,422 | Withdrawal from a Metropolitan Life Insurance policy |
| -- | $22,648 | Capital gain from sale of stock in Alcoa and Haliburton |

2005 (Exhibit 9)

| -- | $72,207 | Withdrawal from a Northwest Mutual Life policy |
| -- | $13,276 | Withdrawal from Mrs. Titus TIAA CREF Account |
| -- | $24,763 | Withdrawal from Mrs. Titus TIAA CREF Account |
| -- | $5,022  | Capital gains |

Total   $155,347.

The Court has little trouble recognizing that the Defendants did receive these amounts as income in the years indicated and that they are properly characterized as non-Schnader Wages. However, it is more problematic to take the next step and also conclude that these amounts were deposited into the Account and that Judge Markovitz somehow just "missed" this fact. That step is, of course, absolutely necessary for the Defendants' *Motion* to succeed, because unless these amounts were deposited into the Account there would be no basis to use them to further set off against the amount of liability found by Judge Markovitz.

Apparently, no documentary evidence exists (or at least none to which the Court has been directed) that directly proves that these amounts were deposited into the Account. The Court directed the Defendants to identify where in the trial record there was evidence to support the contention that these amounts were deposited into the Account. The Defendants cited only to the following trial testimony from the Debtor: [5]

> Q. Could you just reiterate for us what the practice that you and Mrs. Titus have observed since the time of your marriage with respect to your respective earnings and other income?
>
> A. We've always had just a joint account, and anything we've earned or gotten gifts or money that would come to either of us we always put them in that account, and that's all that we've used.
>
> (*Trial Transcript at p. 94, lines 5-8*)
>
> ...
>
> A. ... I'm not certain on the other income and I would have to look to see. At some point, I know I cashed in insurance policies to have the money, and I know that at some point – although I think it was earlier than this – Bonnie had a TIAA-CREF retirement and she rolled that into our checking account. She closed that –
>
> (*Id. at p. 96, lines 23-25; p. 97, lines 1-3*)
>
> ...
>
> A. ... There was a little cash value [in the Prudential policy], which would've gone into our account.
>
> (*Id. at p. 111, lines 6-7*)

This is at least some evidence that the amounts in question were deposited into the Account. On the other hand, the Trustee points out that elsewhere at trial the Debtor testified about the Metropolitan

---

[5] *See Defendants' Brief* at ¶10. The Court has added the question in its first quotation from the trial transcript to put that answer of the Debtor in better context.

12

policy and the Northwestern Mutual policy without saying anything about depositing the proceeds from those policies into the Account, and he did not testify specifically about any capital gains at all. *See Plaintiff's Brief* at 3-4 (citing the *Trial Transcript* at p. 110, line 22 through p. 11, line 3; p. 53, lines 4-6; and p. 53, line 24 through p. 54, line 2). The Trustee also correctly points out that none of the individual dollar amount figures at issue here (*i.e.*, $7,009, $10,422, etc.) matches any of the dollar amount figures of the "Unknown Deposits" into the Account as shown on the list of deposits included in Exhibit 67.[6]

It is thus fair to say that the evidence as to whether any or all of the $155,347 identified in the 2004 and 2005 tax returns was deposited into the Account is somewhat mixed. In deciding the *Motion*, the Court's role is not to substitute its own judgment as to how this mixed evidence should have been resolved to come to a factual conclusion on the deposit issue, but rather to determine whether what Judge Markovitz found constitutes manifest injustice or a clear error of fact. How should that be done? While recognizing that a *Rule 59(e)* review is not the same as an appellate review, given the circumstances presented, the Court nevertheless finds some guidance in the standard that an appellate court would apply in deciding whether a lower court has made a clear error of fact. The Third Circuit has summarized that standard as follows:

> A finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is "left with a definite and firm conviction that a mistake has been committed." Thus, even if we might have come to

---

[6] The Court does not find this absence of any match in dollar amounts to necessarily be conclusive evidence establishing that none of the amounts derived from the tax returns were deposited into the Account since it is possible an individual amount could have consisted of two or more deposits into the Account. For instance, the unspecified capital gain in 2005 could have consisted of several separate gains deposited into the Account totaling $5,022, which could explain why there was no single deposit match as to that amount. This possible explanation becomes less plausible, for example, with respect to the insurance policy withdrawals, where the natural expectation would be for a single check and a corresponding matching deposit amount into the Account.

> different factual conclusions based on this record, we defer to the findings
> of the district court unless we are convinced that the record cannot support
> those findings.

*Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1220 (3d Cir. 1993) (citations omitted; quoting *Anderson v. Bessemer City*, 470 U.S. 564 (1985)).

The Court cannot come to a definite and firm conviction that Judge Markovitz made a mistake in not finding that all or part of the $155,347 was deposited into the Account. The rather scanty and mixed nature of the evidence presented at trial as to whether any of these funds were deposited into the Account could support a finding that they were not so deposited, which would be consistent with Judge Markovitz's failure to treat these funds in the same manner as he did the Social Security Benefits, which the evidence clearly established *were* so deposited.

Furthermore, as the Trustee points out, part of the methodology employed by Judge Markovitz was what might be called an "equitable" application of the burden of proof. Although he placed the burden of proof on the Trustee regarding deposits into and expenditures out of the Account, he also recognized that this information was by its nature more readily available to the Defendants. He therefore spoke on several instances in his *Opinion* of a burden of production being placed on the Defendants. *See, e.g., 467 B.R. at 613, 620.* The exact contours of how this burden of production worked are not clear, and need not be defined for purposes of the *Motion*.[7] It suffices to find that Judge Markovitz could have concluded that the Trustee had not preponderantly proved that the $137,376.20 in Unknown Deposits into the Account were Schnader Wages, but that by the same token the Defendants had not produced sufficient information by which the Trustee could have

---

[7] Again, in the *Motion* the Defendants have not questioned Judge Markovitz's approach in this regard. Therefore, neither will this Court in deciding the *Motion*.

made such proof. As such, he may have been content to allow these Unknown Deposits to remain in something of a state of legal limbo, where they would not be counted as Schnader Wages on the one hand, but on the other they would not be treated as non-Schnader Wages available for use as a set-off in the manner of the Social Security Benefits. The Court finds no manifest injustice in that approach.

The Court is obviously not in a position to read the mind of Judge Markovitz. It is certainly possible that he simply overlooked the Unknown Deposits rather than having made a conscious decision about them as suggested in the preceding paragraph. However, this Court's role in deciding the *Motion* is to determine only if Judge Markovitz made an error that is apparent to the point of being indisputable. For the reasons stated above, the Court does not find an error reaching to that level.

By the Defendants' own acknowledgment, their strongest argument under the *Motion* was with respect to the $155,347. Since that argument fails for the reasons stated above, their remaining objection can be addressed quickly. That objection asks the Court to review all of the monthly statements for the Account during the Look-Back Period, as reproduced in Exhibit 67 and conclude that $357,522.10 of those deposits cannot be attributed to Schnader Wages, and should therefore be deducted from the Defendants' liability in the same manner as was done with the Social Security benefits.

The basis for doing so would be highly speculative. None of the deposits in question have an identified source. Defendants state that "roughly the same amount of money ($11,166.67) was deposited [into the Account] by paper check on the last day of each month" and admit that these

15

deposits are presumably Schnader Wages. They then ask the Court to simply assume that all other deposits would have been non-Schnader Wages. As to possible sources for these deposits, the Defendants point to the withdrawals and capital gains shown on the tax returns (discussed above), as well as to testimony by the Debtor that some deposits representing reimbursements for sports tickets and for business related expenses would have come into the Account during the Look-back Period. The Court has previously noted that none of the amounts of the withdrawals or capital gains match any of the deposit amounts into the Account. As such, the Court is not willing to assume those as a source. The remaining evidence, consisting only of the vague testimony of the Debtor as to reimbursements, without providing any dates or specific amounts, is likewise insufficient to support a finding that a clear error of law or a manifest injustice has occurred.

Altering or amending the judgment previously entered as to damages in this case, based upon a record that is neither plain nor apparent to the point of being indisputable regarding the contentions of the Defendants, is not appropriate. Despite a certain appeal to some of their arguments, the Defendants have failed to meet the demanding standard required of them, showing the existence of a clear error of law or fact or manifest injustice, which would allow this Court at this stage of the case to modify the damage award previously entered.

A separate Order will be entered consistent with this *Opinion*.

Dated: September 6, 2012

_____
Thomas P. Agresti, Chief Judge
United States Bankruptcy Court

Case administrator to serve:
    Douglas Campbell, Esq.
    John Vetica, Esq.